**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN242352)
Ryan P. Cardona, Esquire (SBN302113)
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160
esmith@brodskysmith.com
rcardona@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA SELIGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>GENOMIC HEALTH, INC., JULIAN BAKER, FELIX BAKER, FRED COHEN, BARRY P. FLANNELLY, HENRY J. FUCHS, GINGER L. GRAHAM, GEOFFREY M. PARKER, KIMBERLY POPOVITS, EXACT SCIENCES CORPORATION, and SPRING ACQUISITION CORP.,<br><br>                              Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934 AND FOR BREACH OF FIDUCIARY DUTIES**<br><br>**JURY TRIAL DEMANDED** |

Donna Seligman ("Plaintiff"), by her undersigned attorneys, on behalf of herself and all others similarly situated, alleges upon information and belief, including the investigation of counsel and a review of publicly-available information, except for her own acts which are alleged on personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder class action on behalf of herself and the other public stockholders of Genomic Health, Inc. ("Genomic Health" or the "Company") against the Company

CLASS ACTION COMPLAINT

and the other members of the Company's board of directors (collectively, the "Board" or the "Defendants") for breaching their fiduciary duties in connection with the merger between Genomic Health, Exact Sciences Corporation, ("Parent"), and Spring Acquisition Corp., a wholly-owned subsidiary of Parent ("Merger Sub," and with Parent, "Exact Sciences"). Genomic Health is incorporated under the laws of Delaware and maintains its principal executive offices in Redwood City, California. Genomic Health provides clinically actionable genomic information to personalize cancer treatment decisions in the United States and internationally.

2.     On July 28, 2019, Genomic Health and Exact Sciences announced that they had executed a definitive Agreement and Plan of Merger ("Merger Agreement"), pursuant to which Exact Sciences, through its wholly owned subsidiary Merger Sub, would acquire all the outstanding shares of common stock of Genomic Health in a mixed stock and cash whereby each share of Genomic Health would be converted into the right to receive (a) $27.50 in cash, without interest (the "Cash Consideration"), and (b) a number of shares (the "Stock Consideration", and together with the Cash Consideration, the "Merger Consideration") of common stock, par value $0.01 per share, of Exact Sciences ("Exact Sciences Common Stock") equal to (i) 0.36854, if the average of the volume-weighted average prices per share of Exact Sciences Common Stock on the Nasdaq Stock Market for each of the fifteen consecutive trading days ending immediately prior to the closing date (the "measurement price") is equal to or greater than $120.75, (ii) an amount equal to the quotient obtained by dividing $44.50 by the measurement price if the measurement price is greater than $98.79 but less than $120.75, and (iii) 0.45043, if the measurement price is equal to or less than $98.79, less any applicable withholding taxes (the "Proposed Transaction" or "Merger").

3.     As a result of the deal, Genomic Health stockholders will own only 9% of the combined pro forma company.

4.     As set forth in greater detail below, Defendants have breached their fiduciary duties to Genomic Health stockholders by, *inter alia*, failing to maximize the value stockholders received in exchange for their shares. The Merger Consideration of approximately $72.00 a share fails to

adequately compensate stockholders in light of the Company's recent financial performance, growth prospects and the fact that the consideration is substantially less than the Company's 52-week high of $92.18 and the fact that as recently as March, the Company's shares were trading above the Merger Consideration.

5.     On August 30, 2019, Defendants caused the filing of a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in support of the Proposed Transaction.

6.     Defendants exacerbated their breaches of fiduciary duty by agreeing to unreasonable deal-protection provisions in the Merger Agreement that impeded other potential bidders from submitting a superior offer to acquire Genomic Health after the Merger Agreement was signed. Specifically, the Defendants agreed to: a provision that required Genomic Health to pay a termination fee of $92.4 million if the Board terminated the Merger Agreement to accept a superior proposal; a non-solicitation provision which restricted the Board from soliciting other potentially superior offers and from continuing existing discussions with potential acquirers; and an "information rights" provision, which provided Exact Sciences with unfettered access to information about other potential proposals, gave Exact Sciences several days to match any competing offer, and provided Exact Sciences with the perpetual right to attempt to match any superior bid. These deal protection provisions collectively operate to impede other potential bidders from submitting a superior offer for the Company, and were undoubtedly insisted upon by Exact Sciences in order to barricade its insufficient offer from the threat of competing proposals.

7.     Additionally, large holders of Genomic Health have entered into voting agreements that all but guarantee the deal will be consummated. Specifically, Felix and Julian Baker and certain funds advised by entities with whom they are affiliated, which collectively own approximately 25.3% of the outstanding shares of Genomic Health common stock, have entered into agreements to vote in favor of the Proposed Transaction.

8.     In addition, the Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Registration Statement describes an insufficient sales process in which

1  the Board rushed through an inadequate "sales process" in which the only end goal was a sale to

2  Exact Sciences.

3      9.      Such a sales process, or lack thereof, clearly indicates that the only end-goal

4  acceptable to the Defendants was an acquisition of Genomic Health by Exact Sciences.

5      10.      Next, it appears as though the Board has entered into the Proposed Transaction to

6  procure for themselves and senior management of the Company significant and immediate benefits

7  with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the

8  Merger Agreement, upon the consummation of the Proposed Transaction, Company Board

9  Members and executive officers will be able to exchange all Company equity awards for the

10  merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of

11  lucrative change-in-control agreements, triggered upon the termination of their employment as a

12  consequence of the consummation of the Proposed Transaction.

13      11.      Genomic Health's executive team collectively could make around $30 million from

14  the cancer test pioneer's $2.8 billion buyout by Exact Sciences Corp. Change-of-control provisions

15  in the contracts of Defendant Popovits, Chief Financial Officer G. Bradley Cole, Chief Operating

16  Officer Frederic Pla, Chief Scientific Officer Dr. Steven Shak and Chief U.S. Commercial Officer

17  James Vaughn allow them to receive cash severance payments, accelerated vesting of equity

18  awards and benefits if the deal is consummated as expected by the end of the year.

19      12.      In further violation of their fiduciary duties, Defendants caused to be filed the

20  materially deficient Registration Statement on August 30, 2019 with the SEC in an effort to solicit

21  stockholders to vote their Genomic Health shares in favor of the Proposed Transaction.  The

22  Registration Statement is materially deficient, deprives Genomic Health stockholders of the

23  information they need to make an intelligent, informed and rational decision of whether to vote

24  their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary

25  duties.  As detailed below, the Registration Statement omits and/or misrepresents material

26  information concerning, among other things: (a) the sales process and in particular, certain

27  conflicts of interest for management; (b) the financial projections for Genomic Health, provided

28

4

CLASS ACTION COMPLAINT

by Genomic Health to the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Goldman Sachs.

13.    According to the Registration Statement, Defendant Popovits would receive $13.4 million with a change of control of the company. Pla would receive $5.7 million, Cole $5.3 million, and Shak and Vaughn $3.7 million each.

14.    As alleged in further detail below, both the Merger Consideration Genomic Health stockholders will receive in connection with the Proposed Transaction and the process by which Defendants intend to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public stockholders of the Company.

15.    The Defendants' conduct constitutes a breach of their fiduciary duties owed to Genomic Health's former public stockholders, and a violation of applicable legal standards governing the Defendants' obligations.

16.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

18.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

1  District as to render the exercise of jurisdiction over defendant by this Court permissible under

2  traditional notions of fair play and substantial justice.

3      19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Genomic

4  Health has its principal place of business is located in this District, and each of the Individual

5  Defendants, as Company officers or directors, has extensive contacts within this District.

6                    **PARTIES AND RELEVANT NON-PARTIES**

7      20.    Plaintiff was, at all times relevant hereto, a stockholder of Genomic Health.

8      21.     Defendant Julian Baker has served on the Board since 2001 and is the Lead

9  Independent Director.  He is a managing partner of Baker Brothers Investments, which he formed

10 with his brother, and fellow Board member, Felix Baker.  Baker Brothers Investments owns

11 approximately 25% of the outstanding stock of the Company and has pledged those votes to the

12 Proposed Transaction via voting agreements.

13     22.    Defendant Felix Baker has served on the Board since 2012 and at all relevant times.

14 He is a managing partner of Baker Brothers Investments, which he formed with his brother, and

15 fellow Board member, Julian Baker.  Baker Brothers Investments owns approximately 25% of the

16 outstanding stock of the Company and has pledged those votes to the Proposed Transaction via

17 voting agreements.

18     23.    Defendant Fred Cohen has been a member of the Board since 2002 and at all

19 relevant times.

20     24.    Defendant Barry P. Flannelly has been a member of the Board since April 2019 and

21 at all relevant times.

22     25.    Defendant Henry J. Fuchs has been a member of the Board since 2013 and at all

23 relevant times.

24     26.    Defendant Ginger L. Graham has been a member of the Board since 2008 and at all

25 relevant times.

26     27.    Defendant Geoffrey M. Parker has been a director since 2016 and at all relevant

27 times.

28

CLASS ACTION COMPLAINT

28.     Defendant Kimberly Popovits is CEO of Genomic Health since 2009 and Chair of the Board since 2012 and at all relevant times. She has also served as President and Chief Operating Office since 2002.

29.     The Defendants identified in ¶¶ 21-28, above, are sometimes collectively referred to herein as the "Individual Defendants."

30.     Defendant Genomic Health is a Delaware corporation that maintains its principal executive offices in Redwood City, California.  The Company's common stock traded on the NASDAQ stock exchange under the symbol "GHDX."

31.     Defendant Exact Sciences Corporation is a Delaware Corporation that maintains its principal executive offices in Madison, Wisconsin.  Exact Sciences is a molecular diagnostics company, focusing on developing products for the early detection and prevention of various cancers in the United States.  The Company's common stock traded on the NASDAQ stock exchange under the symbol "EXAS."

32.     Defendant Merger Sub is a Delaware Corporation and wholly-owned subsidiary of Exact Sciences.

### THE DEFENDANTS' FIDUCIARY DUTIES

33.     By reason of the Defendants' positions with the Company as officers and/or directors, said individuals were in a fiduciary relationship with Plaintiff and the other public stockholders of Genomic Health and owed Plaintiff and the other members of the Class (defined below) the duties of loyalty, good faith, due care, and candor.

34.     By virtue of their positions as directors and/or officers of Genomic Health, the Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Genomic Health to engage in the practices complained of herein.

35.     Each of the Defendants was required to act in good faith, in the best interests of the Company's stockholders and with due care.  To diligently comply with these duties, the directors and officers of a corporation may not take any action that:

7

CLASS ACTION COMPLAINT

a.    adversely affects the value provided to the corporation's stockholders;

b.    contractually prohibits them from complying with or carrying out their fiduciary duties;

c.    discourages or inhibits alternative offers to purchase control of the corporation or its assets;

d.    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

e.    will provide the officers/and or directors with preferential treatment at the expense of, or separate from, the public stockholders.

36.    In accordance with the Board's duty of loyalty, the Defendants, as officers and/or directors of Genomic Health, were obligated to refrain from:

a.    participating in any transaction where the officers' or directors' loyalties are divided;

b.    participating in any transaction where the officers or directors receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the public stockholders.

37.    Defendants also had a duty to maximize the return to Genomic Health stockholders in connection with a sale of the Company.

38.    Additionally, in accordance with the Board's duty of candor, the Defendants were required to provide the Company's stockholders with all material information concerning the Transaction, and not make incomplete partial disclosures regarding the Transaction.

39.    Defendants, separately and together, in connection with the Transaction, knowingly or recklessly violated their fiduciary duties, including their duties of loyalty, good faith, due care and candor owed to Plaintiff and other former public stockholders of Genomic Health.

1

**SUBSTANTIVE ALLEGATIONS**

2       40.    Genomic Health is a healthcare company, provides clinically actionable genomic

3   information to personalize cancer treatment decisions in the United States and internationally.  The

4   company develops and commercializes genomic-based clinical laboratory services that analyze

5   the underlying biology of cancer, which allows physicians and patients to make individualized

6   treatment decisions. Genomic Health was founded in 2000 and is headquartered in Redwood City,

7   California.

8       41.    On July 29, 2019, the Company announced its Second Quarter 2019 results, and

9   advising the market that it had a 19% revenue growth and record profit in the quarter.  As a result,

10  the Company raised its guidance on full-year revenue and net income.

11      42.    Defendant Popovits stated, "In the second quarter of 2019 we delivered 19% topline

12  revenue growth and twice the profit compared to last year.  These record results were driven by

13  strength across our entire business with first-half revenue growth of 13% in U.S. invasive breast

14  cancer, 44% in U.S. early-stage prostate cancer and 28% outside of the United States," "With this

15  record first-half performance, a public reimbursement recommendation in Germany and increasing

16  private coverage for our urology tests, we are raising both our full-year 2019 revenue and net

17  income guidance."

18      43.    The Company further reported for the six months ending June 30, 2019, that "[t]otal

19  revenue for the six months ended June 30, 2019, was $222.9 million compared with $188.2 million

20  for the same period in 2018, an increase of 18.4%, and an increase of 19.1% on a non-GAAP

21  constant currency basis. U.S. product revenue was $187.0 million for the six months ended June

22  30, 2019, compared with $160.3 million for the same period in 2018, an increase of 16.7%."

23      44.    Additionally, the Company reported its 16th consecutive quarter of improved non-

24  GAAP profitability.

25      45.    In sum, the Company was undervalued by the market, and recent strategic

26  initiatives have placed the Company on sound footing to continue to generate impressive financial

27  results in the coming fiscal quarters.  Despite the Company's strong prospects for future growth,

28

CLASS ACTION COMPLAINT

the Board agreed to sell the Company at a price below its intrinsic value, to the detriment of Genomic Health's common stockholders.

**The Proposed Transaction**

46.    On July 29, 2019, Genomic Health and Exact Sciences issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

MADISON, Wis. and REDWOOD CITY, Calif., July 29, 2019 — Exact Sciences Corp. (NASDAQ: EXAS) and Genomic Health, Inc. (NASDAQ: GHDX) today announced that the companies have entered into a definitive agreement under which Exact Sciences will combine with Genomic Health for $72.00 per share in a cash and stock transaction valued at $2.8 billion. The transaction, which has been unanimously approved by the Boards of Directors of both companies, is expected to be completed by the end of 2019.

Together, Exact Sciences and Genomic Health will create a leading global cancer diagnostics company. The combined company will offer two of the strongest and fastest growing brands in cancer diagnostics, Cologuard and Oncotype DX, providing a robust platform for continued growth. With this enhanced platform, including a commercial presence in more than 90 countries, the combined company expects to continue to increase adoption of current tests, and to bring new innovative cancer diagnostics to patients throughout the world.

On a pro forma basis, the combined company expects to generate revenue of approximately $1.6 billion and gross profit of approximately $1.2 billion in 2020. Additionally, the combination is expected to generate annualized cost synergies of approximately $25 million within the third full year following close, primarily through reducing public company costs and purchasing optimization.

"Uniting the best minds and molecular diagnostics capabilities will advance the fight against cancer. Combining industry pioneers Exact Sciences and Genomic Health is a pivotal step toward building the leading cancer diagnostics company in the world," said Kevin Conroy, chairman and CEO of Exact Sciences. "Exact Sciences is continuing to grow sales and expand adoption of Cologuard at a rapid pace, and Genomic Health's Oncotype DX is the global standard of care to inform treatment decisions for women with breast cancer. Together, with our collective resources and broader platform, we will be able to provide our existing tests to more people, while also accelerating the development and launch of future cancer diagnostic tests. We are excited to join together two teams who are united in their dedication to making a positive impact on patients' lives."

"We are very pleased to join forces with Exact Sciences, a company and team with which we have a shared vision to revolutionize the way cancer is diagnosed and treated," said Kim Popovits, chairman of the board, chief executive officer and

president of Genomic Health. "Genomic Health has achieved incredible success over nearly two decades in pioneering cancer diagnostics, and the recent landmark TAILORx trial results set a new standard of care for the use of the Oncotype DX test for women with early-stage invasive breast cancer. This transaction provides immediate value to Genomic Health stockholders through an upfront cash payment, as well as ownership in a combined company with enhanced financial strength and the commercial and R&D capabilities to continue to drive significant growth into the future."

**Combining Talented Teams with Proven Capabilities to Create a Leading Cancer Diagnostics Company**

· **Joins two of the strongest brands in cancer diagnostics into one entity and provides platform for continued growth**: Cologuard and Oncotype DX, the companies' leading brands, will respectively continue to help detect colorectal cancer and inform treatment decisions in colorectal, breast and prostate cancer, which collectively represent approximately 40% of all solid tumor incidence.

· Exact Sciences' Cologuard has a total available U.S. screening market of $15 billion, with an additional potential $3 billion opportunity among people ages 45-49(1). To date, Cologuard has captured less than 6% of the large addressable market of people over 50 years old, and is rapidly building on its 174,000 health care provider customer base, with a goal of reaching 40% share of the market over the long-term. In the second quarter of 2019, Cologuard revenue grew 94% year-over-year.

· Genomic Health's Oncotype IQ portfolio has guided personalized treatment decisions for more than one million cancer patients worldwide, and delivered more than 19% year-over-year overall revenue growth in the second quarter of 2019. Genomic Health estimates that its Oncotype DX suite of products in oncology and urology have a total available market of $2 billion.

· **Forms best-in-class commercial, R&D and clinical organization, with enhanced scale and scope in cancer diagnostics**: The transaction will create a combined R&D team with extensive clinical capabilities and a robust evidence generation engine, complemented by proven regulatory expertise, and key relationships with oncologists. The combined commercial organization will have more than 1,000 team members inclusive of sales, marketing and reimbursement teams. The combined company will have the financial strength to support a high level of investment in R&D. This will support the development of innovative products across the diagnostic paradigm, including the ongoing work to identify proprietary biomarkers across the world's 15 deadliest cancers, while continuing to advance the adoption of current products.

· **Provides global infrastructure to accelerate the ability to provide new innovative cancer diagnostics to patients**: The combined company will have a

commercial presence in more than 90 countries and expanded reach across primary care, oncology, OB/GYN, gastroenterology, and urology to support growth of existing and future cancer tests. The combined company will build upon Genomic Health's presence in the San Francisco Bay Area, providing lab infrastructure in a state where the Medicare Administrative Contractor participates in the MolDx program, which may facilitate reimbursement of future liquid biopsy products.

**Transaction Terms**

Under the terms of the agreement, for each share of Genomic Health common stock they own, Genomic Health stockholders will receive $27.50 in cash and $44.50 in shares of Exact Sciences stock, subject to a 10% collar centered on Exact Sciences' volume-weighted average price for the 45 trading days ended July 26, 2019.

Based on the parties' closing stock prices as of July 26, 2019, the last trading day prior to today's announcement, the total per-share consideration represents a premium of approximately 19% to Genomic Health's volume-weighted average price ("VWAP") for the last 30 trading days. Upon closing, Exact Sciences shareholders are expected to own approximately 91% of the combined company, and Genomic Health stockholders are expected to own approximately 9%.

**Transaction Approvals**

The transaction is subject to customary closing conditions and regulatory approvals, including the approval of stockholders of Genomic Health. Felix and Julian Baker and certain funds advised by entities with whom they are affiliated, which collectively own approximately 25.3% of the outstanding shares of Genomic Health common stock, have entered into agreements to vote in favor of the transaction.

**Advisors**

Centerview Partners and XMS Capital Partners are serving as financial advisors to Exact Sciences and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor. Goldman Sachs & Co. LLC is serving as financial advisor to Genomic Health and Sullivan & Cromwell, LLP and Pillsbury Winthrop Shaw Pittman LLP are serving as legal advisors.

**The Inadequate Merger Consideration**

47.     Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

48.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately

CLASS ACTION COMPLAINT

reflect the intrinsic value of the Company. Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

49.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company.

50.     The Merger Consideration of approximately $72.00 a share fails to adequately compensate stockholders in light of the Company's recent financial performance, growth prospects and the fact that the consideration is substantially less than the Company's 52-week high of $92.18 and the fact that as recently as March, the Company's shares were trading above the Merger Consideration.

51.     In fact, in February 2019, Canaccord Genuity analyst Mark Massaro remained bullish on Genomic Health stock, stating a target price of $77 in June 2019 and reiterating same as recently as July 24, 2019.

52.     Moreover, earlier this year, Genomic Health stock was highly rated by Investor's Business Daily. It has a Composite Rating of 97. The CR measures a stock's key growth metrics. This puts Genomic Health stock in the top 3% of all stocks.

53.     Clearly, while the deal will be beneficial to Exact Sciences it comes at great expense to Plaintiff and other public stockholders of the Company.

54.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Exact Sciences at the expense of Genomic Health stockholders, which clearly indicates that Genomic Health stockholders were not an overriding concern in the formation of the Proposed Transaction

**The Defendants' Conflicts of Interest**

55.     The breakdown of the benefits of the deal indicate that Genomic Health insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the

public stockholders of Genomic Health. Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.

56.    Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.

57.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement. These payouts will be paid to Genomic Health insiders, as follows:

| Name | Unvested Options ($) | Unvested RSUs ($) | Total ($) |
| --- | --- | --- | --- |
| Kimberly J. Popovits | 6,388,291 | 2,604,096 | 8,992,387 |
| G. Bradley Cole | 2,001,726 | 849,168 | 2,850,894 |
| Frederic Pla, Ph.D. | 2,321,123 | 963,432 | 3,284,555 |
| Steven Shak, M.D. | 1,611,184 | 663,120 | 2,274,304 |
| James Vaughn | 1,859,254 | 812,232 | 2,671,486 |

58.    Moreover, certain employment agreements with certain Genomic Health executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by the Company's common stockholders, as follows:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
| --- | --- | --- | --- | --- |
| Kimberly J. Popovits | 4,392,640 | 8,992,387 | 36,930 | 13,421,957 |
| G. Bradley Cole | 2,441,501 | 2,850,894 | 51,587 | 5,343,981 |
| Frederic Pla, Ph.D. | 2,370,550 | 3,284,555 | 52,985 | 5,708,090 |
| Steven Shak, M.D. | 1,412,952 | 2,274,304 | 38,690 | 3,725,946 |
| James Vaughn | 1,077,542 | 2,671,486 | 39,739 | 3,788,767 |

59.    Thus, while the Proposed Transaction is not in the best interests of Plaintiff and the Class, it will produce lucrative benefits for the Defendants and certain other members of Company management.  Accordingly, as a result of the Merger, Company insiders, including the Defendants

1    will receive large paydays which would not otherwise have occurred, thus tainting their

2    motivations in approving the Proposed Transaction.

3            **The Materially Misleading and/or Incomplete Registration Statement**

4            60.    On August 30, 2019, the Genomic Health Board caused to be filed with the SEC a

5    materially misleading and incomplete Registration Statement that, in violation of their fiduciary

6    duties, failed to provide the Company's stockholders with material information and/or provides

7    them with materially misleading information critical to the total mix of information available to

8    the Company's stockholders concerning the financial and procedural fairness of the Proposed

9    Transaction.

10            _Omissions and/or Material Misrepresentations Concerning Genomic Health's Financial_

11            _Projections_

12            61.    The Registration Statement fails to provide material information concerning

13    financial projections provided by Genomic Health's management and relied upon by Goldman

14    Sachs in its analyses.   The Registration Statement discloses management-prepared financial

15    projections for the Company which are materially misleading.   The Registration Statement

16    indicates that in connection with the rendering of its fairness opinion, Goldman Sachs "reviewed

17    certain internal financial analyses and forecasts for Genomic Health prepared by its management

18    and for Exact Sciences standalone prepared by Genomic Health's management, and certain

19    financial analyses and forecasts for Exact Sciences pro forma for the transaction prepared by

20    Genomic Health's management, in each case, as approved for Goldman Sachs' use by Genomic

21    Health, which are referred to as the management forecasts, including certain operating synergies

22    projected by Genomic Health's management to result from the merger, as approved for Goldman

23    Sachs' use by Genomic Health, which are referred to as the synergies"

24            62.    Accordingly, the Registration Statement should have, but fails to provide, certain

25    information in the projections that Genomic Health management provided to the Board and

26    Goldman Sachs.   Courts have uniformly stated that "projections . . . are probably among the most

27    highly-prized disclosures by investors.   Investors can come up with their own estimates of discount

28

15

rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201–03 (Del. Ch. 2007).

63.    With respect to the Company's Projections, the Registration Statement fails to provide material information concerning the financial projections prepared by Genomic Health management, including, (i) the Registration Statement fails to disclose material line items for Non-GAAP financial measures, such as EBITDA and EBIT; (ii) the Registration Statement fails to provide a reconciliation of Non-GAAP to GAAP measures; and (iii) the Registration Statement fails to disclose stock-based compensation.

64.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

65.    Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Genomic Health are unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

66.    In the Registration Statement, Goldman Sachs describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

67.    With respect to the *Illustrative Discounted Cash Flow Analysis- Genomic Health Standalone*, the Registration Statement fails to disclose the following:

a. The basis for the selection of the discount rate range of 9% to 10%;

b. The number of Fully-Diluted shares of the Company as of June 30, 2019; and

c. The basis for the range of terminal values for Genomic Health.

68.    With respect to the *Discounted Cash Flow Analysis – Pro Forma Value Per Share to Genomic Health Shareholders*, the Registration Statement fails to disclose the following:

a. The basis for the selection of the discount rate range of 8.5% to 9.5%;

b. The number of Fully-Diluted shares of the Company as of June 30, 2019; and

c. The basis for the range of terminal growth rates of 3% - 5% for Genomic Health.

69.    With respect to the *Illustrative Present Value of Future Share Analysis – Genomic Health Standalone,* the Registration Statement fails to disclose the following:

a. The range of illustrative terminal values for the company;

b. The basis for applying enterprise value to forward revenue multiples of 3.5x 5.5x;

c. The number of outstanding shares of the company;

d. The inputs and assumptions used to derive the discount rate of 9.4%; and

e. The basis for applying perpetuity growth rates of 2% - 4%.

70.    With respect to the *Illustrative Pro Forma Present Value of Future Share Analysis – Value to Genomic Health Stockholders,* the Registration Statement fails to disclose the following:

a. The range of illustrative terminal values for the company;

b. The basis for applying enterprise value to forward revenue multiples of 9.0x - 14.0x;

c. The number of outstanding shares of the pro forma combined company following the merger;

d. The inputs and assumptions used to derive the discount rate of 8.5% - 9.5%; and

e. The basis for applying perpetuity growth rates of 3% - 5%.

CLASS ACTION COMPLAINT

71.    With respect to the *Precedent Transactions Analysis,* the Registration Statement fails to disclose the following:

           a. The transaction by transaction multiples and metrics for the analysis.

72.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

**The Preclusive Deal Protection Provisions Impede Superior Bidders From Emerging**

73.    In violation of the Board's duty to maximize stockholder value, the Defendants agreed to provisions in the Merger Agreement that impeded other potential bidders from submitting a superior offer to acquire the Company.

74.    First, the Merger Agreement contains a "no solicitation" provision which prohibits the Company or the Defendants from taking any affirmative action to comply with their fiduciary duties to obtain the best price possible under the circumstances.  This provision requires the Company and the Defendants to immediately cease any discussions or negotiations concerning a superior proposal with any potential suitors, and further prohibits them from soliciting any alternative acquisition proposal.

75.    Furthermore, the Merger Agreement grants Exact Sciences matching rights, which provides Exact Sciences with: (i) access to confidential, non-public information about any competing proposals from third parties which it could have used to prepare a matching bid; and (ii) several days to negotiate with Genomic Health, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer had been received.

76.    Additionally, the Merger Agreement provides that Genomic Health has to pay Parent a termination fee of $92.4 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee further deters other potential suitors from making a superior offer for the Company, as any competing bidder would have to pay an unreasonable premium for the right to provide Genomic Health stockholders with a superior offer. The termination fee is also payable by Genomic Health to Exact Sciences if the Merger Agreement

is terminated in certain circumstances and, within twelve (12) months of such termination, Genomic Health (i) consummates an alternative change of control proposal or (ii) enters into a definitive agreement with respect to, and subsequently consummates, an alternative change of control proposal.

77.     Additionally, concurrently with the execution of the Merger Agreement, defendants Felix J. Baker and Julian C. Baker, directors of Genomic Health, and certain funds advised by an entity affiliated with Felix J. Baker and Julian C. Baker, entered into voting agreements with Exact Sciences (each, a "Voting Agreement") pursuant to which, among other things and subject to the terms and conditions therein, such stockholders agreed, in their capacities as holders of shares of Genomic Health Common Stock, to vote all shares of Genomic Health Common Stock beneficially owned by such stockholders at the time of the stockholder vote on the Merger in favor of adoption of the Merger Agreement and the approval of the transactions contemplated by the Merger Agreement, including the Merger, and any other matter necessary to consummate such transactions, and not to vote in favor of, or tender their shares of Genomic Health Common Stock into, any competing offer or acquisition proposal.  In addition, each stockholder party to a Voting Agreement waived appraisal rights and provided an irrevocable proxy to Exact Sciences to vote in favor of the Merger, including by voting for the adoption of the Merger Agreement.

78.     As of the date of the Voting Agreements, an aggregate of 9,435,243 shares of Genomic Health Common Stock, representing approximately **25.3%** of the outstanding shares of Genomic Health Common Stock, are subject to the Voting Agreements.

79.     Ultimately, these deal protection provisions restrain the Board's ability to solicit or engage in negotiations with third parties regarding a superior proposal for the Company's stockholders, and operate conjunctively to unreasonably impede a superior bidder from emerging.

## CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23, as a class action individually and on behalf of all holders of Genomic Health common stock who are being and will be harmed by the Individual Defendants' actions, described herein (the "Class").

Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant.

81.     This action is properly maintainable as a class action.

82.     The Class is so numerous that joinder of all members is impracticable.  As of August 6, 2019, there were more than 37 million shares of Genomic Health common stock issued and outstanding, which are believed to be held by individuals and entities dispersed across the country.

83.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include the following:

(a)     whether the Defendants breached their fiduciary duties of undivided loyalty, due care, good faith and candor with respect to Plaintiff and the other members of the Class in connection with the Transaction;

(b)     whether the Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(c)     whether the Individual Defendants have engaged in self-dealing, to the detriment of Genomic Health public stockholders

(d)     whether the Proposed Transaction is unfair to the Class, in that the price is inadequate and is not the fair value that could be obtained under the circumstances; and

(e)     whether the Class is entitled to injunctive relief and/or damages as a result of the wrongful conduct committed by Defendants

84.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

85.     Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

CLASS ACTION COMPLAINT

86.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

87.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

88.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants in Their Capacities as Officers or Directors of the Company)

89.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

90.    As officers and/or directors of Genomic Health, the Defendants had a fiduciary obligations to: (a) undertake an appropriate evaluation of Genomic Health's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance and maximize Genomic Health's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public stockholders; (d) adequately ensure that no conflicts of interest exist between the Defendants' own interests and their fiduciary obligations, and, if such conflicts existed, to ensure that all conflicts were resolved in the best interests of Genomic Health's public stockholders; (e) actively evaluate strategic alternatives for the Company and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Genomic Health; and (f) forego any transaction that was not fair to all of the Company's public shareholders and continue with the Company's standalone plan instead.

91.    The Defendants breached their fiduciary duties to Plaintiff and the Class.  As

21

1   alleged herein, the Defendants orchestrated a process to sell Genomic Health that undervalued the

2   Company.  The Defendants also failed to sufficiently inform themselves of Genomic Health's

3   value, or disregarded the true value of the Company.

4       92.    Further, the Defendants caused materially incomplete and misleading information

5   concerning the Transaction to be disseminated to the Company's public stockholders in soliciting

6   them to vote in favor of the Transaction.  The Defendants had an obligation to be complete and

7   accurate in their disclosures concerning the Transaction.  The Registration Statement failed to

8   disclose material information, including financial information and information necessary to

9   prevent the statements contained therein from being incomplete and misleading.  Because of the

10  Defendants' failure to provide full and fair disclosure of material information concerning the

11  Transaction, Plaintiff and the Class were unable to cast an informed vote with respect to the

12  Transaction.

13      93.    As a result of Defendants' breaches of fiduciary duty as described herein, Plaintiff

14  and the Class have suffered damages, in an amount to be determined at trial.

15                          **SECOND COUNT**

16          **Aiding and Abetting the Board's Breaches of Fiduciary Duty**

17      **(Against Defendants Genomic Health, Exact Sciences and Merger Sub)**

18      94.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

19  herein.

20      95.    Defendants Genomic Health, Exact Sciences and Merger Sub knowingly assisted

21  the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition,

22  which, without such aid, would not have occurred.

23      96.    As a result of this conduct, Plaintiff and the other members of the Class have been

24  and will be damaged in that they have been and will be prevented from obtaining a fair price for

25  their shares.

26      97.    Plaintiff and the members of the Class have no adequate remedy at law.

27

28                               22

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against the Individual Defendants)**

98.     Plaintiff repeats all previous allegations as if set forth in full herein.

99.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

100.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

101.     It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

102.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

103.     No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

104.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

CLASS ACTION COMPLAINT

105.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

106.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

107.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against the Individual Defendants)</u>**

108.    Plaintiff repeats all previous allegations as if set forth in full herein.

109.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

110.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.

CLASS ACTION COMPLAINT

The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

111.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Genomic Health's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

112.    The Individual Defendants acted as controlling persons of Genomic Health within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Genomic Health to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Genomic Health and all of its employees. As alleged above, Genomic Health is a primary violator of Section 14 of the Exchange Act and SEC Rule Registration Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands relief in her favor and in favor of the Class and against Defendants as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative and her counsel as Class counsel;

B.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Genomic

1  Health and obtain a transaction which is in the best interests of Genomic Health and its

2  stockholders;

3      D.      Rescinding the Merger or awarding Plaintiff and the Class rescissory damages;

4      E.      Awarding Plaintiff and the Class money damages for harm suffered as a result of

5  the Defendants' wrongdoing, including pre-judgment and post-judgment interest;

6      F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

7  attorneys' and experts' fees; and

8      G.      Granting such other and further equitable relief as this Court may deem just and

9  proper.

10                          **JURY DEMAND**

11     Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

12

13  Dated: September 11, 2019                    **BRODSKY & SMITH, LLC**

14                                              By:

15                                              Evan J. Smith (SBN242352)
                                                Ryan P. Cardona (SBN302113)
16                                              9595 Wilshire Boulevard, Suite 900
                                                Beverly Hills, CA 90212
17                                              Telephone:    (877) 534-2590
                                                Facsimile:    (310) 247-0160
18                                              Email: esmith@brodskysmith.com
                                                        rcardona@brodskysmith.com
19
                                                *Counsel for Plaintiff*
20

21

22

23

24

25

26

27

28
                                    26